UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IRMA YADIRA MENDEZ LOPEZ,

        Plaintiff,

v.                                   Case No:  6:20-cv-1118-GKS-GJK

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## REPORT AND RECOMMENDATION

Irma Yadira Mendez Lopez (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for disability insurance benefits. Doc. Nos. 1, 30. Claimant alleges a disability onset date of December 3, 2016.  R. 229-237.

To be kind, the briefing in this case is poor. Notwithstanding the Scheduling Order requiring the parties to identify and argue their position on each issue individually, Claimant frames the broadest of issues and in the substantive positions of her brief the narrative goes further astray – presenting a dizzying collage.

The description of the first issue begins with: "Whether the Commissioner correctly applied the relevant legal standards to the analysis of the entire record .

. . ." Doc. No. 30 at 18. Let us stop because the description already encompasses all "relevant" (yet undescribed) legal standards. The description continues: "and whether the Commissioner's findings were supported by substantial evidence." *Id.* So what is to be a discrete issue is now framed to seemingly encompass all relevant legal standards and all factual findings. The first paragraph under the first issue is no more helpful. In conclusory fashion the Claimant alleges the following errors:

1. The record, at some unspecified level in the familiar five-step sequential review process, was "misinterpreted or misrepresented" in order to support denial;[1]

2. The Commissioner failed to consider and apply "the required rules and legal standards" to Claimant's claim;

3. Subsequently, the Appeals Counsel failed to "adequately evaluate" the appeal;

_____

[1] At step one, the administrative law judge ("ALJ") determines whether the claimant is engaging in substantial gainful activity. 20 CFR 416.920(b). At step two, the ALJ determines whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). At step three, the ALJ determines whether the claimant's impairment or combination of impairments  is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 40, Subpart P, Appendix I. 20 CFR 416.920(d); 416.925; 416.926. At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 CFR 416.920(f). Finally, at step five, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 CFR 416.920(g).  Different legal standards govern each step of the process and, therefore, it is always helpful when the parties identify what step in the process each error allegedly occurred.

4. The ALJ failed to "appropriately consider" and "apply the correct legal standards to the "opinions, testimony and weight of the evidence;"[2] and

5. The ALJ's decision is not supported by substantial evidence.

*Id.* at 19. The Claimant then delves into a more substantive discussion of these alleged errors. In doing so, Claimant finds the following problems with the ALJ's decision:

1. The ALJ's summary fails to include the severity of certain diagnostic findings, *id.* at 21;

2. The ALJ stated he gave particular consideration to certain disorders, but had he done so he would have also considered their effect, *id.*;

3. The ALJ failed to meet the requirements of Listings 1.15 and 1.16, which requires consideration of musculoskeletal disorders, *id.* at 22;

4. The ALJ erroneously stated there were no illusions or hallucinations present, *id.*;

5. The ALJ failed to mention side effects of medications when there is evidence of same, *id.* at 23; and

6. The ALJ stated Claimant had not sought treatment from a spine specialist since October 2017, when the record indicates Claimant treated with a neurologist, Dr. Kim, through May 2019, *id.*

---

[2] This issue alone seemingly includes multiple errors of law.

Thus, the Court recognizes six issues addressed within the first issue framed by Claimant.

The second issue is framed as whether the Commissioner: "applied the correct legal standards when evaluating the combined effect of Plaintiff's Impairments and in determining the applicable residual functional capacity . . . ." *Id.* at 36. As to that issue, Claimant identified the following errors:

1. The ALJ found the Claimant was able to communicate in English, *id.* at 37;

2. The ALJ failed to make specific and well-articulated findings as to the combined effect of Claimant's impairments, *id.* at 39;

3. The ALJ failed to make a finding as to the transferability of job skills, *id.* at 41;

4. The ALJ based his RFC finding on erroneous information and incomplete analysis, *id.* at 42;

5. The ALJ failed to articulate specific jobs Claimant is able to perform, *id.* at 42;

6. Finally, Claimant "reiterates" all prior statements in her brief, *id.* at 43.

Thus, in what Claimant has framed as only two issues she argues or at least mentions roughly six times as many issues.

The briefing in this case does not comply with the Scheduling Order, which requires that each issue "be set forth in a separate subheading." Doc. No. 23 at 4.

Nor is it the first time Claimant's counsel has been found to be non-compliant with such an order and failing to do so has resulted in the arguments being rejected. *Ramirez v. Comm'r of Soc. Sec.*, No. 6:19-cv-2391-NPM, 2021 WL 1207759, at *4 (M.D. Fla. Mar. 31, 2021) (finding that "[b]y failing to cite to the record and failing to cite to legal authority in many instances, [the claimant] has failed to comply with the Scheduling Order and failed to meet her burden of developing her arguments . . . ."); *Colbert v. Comm'r of Soc. Sec.*, 6:19-cv-2176-LRH, 2021 WL 1103692, at *9 n.13 (M.D. Fla. Mar. 23, 2021) (finding the claimant "raises several conclusory arguments [and] does not otherwise explain how the ALJ allegedly committed error in each of these instances and provides no legal authority . . . [so] they are deemed to have been waived . . . ."). Similarly, for the reasons set forth below the Court finds Claimant has failed to support and has waived several arguments alluded to in her brief.

## I.     STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla–i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982);

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.   ANALYSIS

The ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy; bilateral carpal tunnel syndrome; and migraines. R. 23. The ALJ found that Claimant had the RFC to perform light work as defined by 20 C.F.R. § 416.967(b) with the following limitations:

> [The Claimant] can frequently climb ramps/stairs and can never climb ladders, ropes or scaffolds. The claimant can occasionally kneel, crouch and crawl. She can frequently push and pull with her bilateral upper extremities. She can frequently reach in all directions, handle and finger with her bilateral upper extremities. She must avoid concentrated

> exposure to extreme cold, extreme heat, vibration and
> pulmonary irritants such as fumes, odors, dust[,] gases and
> poor ventilation. She must avoid concentrated exposure to
> workplace hazards such as moving machinery, moving
> mechanical parts, and unprotected heights.

R. 26. The ALJ also found that, given these limitations, Claimant is unable to
perform her past relevant work. R. 32. In reaching his decision, the ALJ found that
Claimant "does not have an impairment or combination of impairments that meets
or medically equals the severity of one of the listed impairments in 20 CFR Part
404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d),
416.925 and 416.926)." R. 26. The ALJ focused on Sections 1.00 *et seq.*,
Musculoskeletal Disorders, 3.00 *et seq.*, Respiratory Impairment, and 11.00 *et seq.*,
Neurological Disorders, ultimately finding that "the medical evidence does not
document listing-level severity and no acceptable medical source has mentioned
findings equivalent in severity to the criteria of any listed impairment,
individually or in combination." *Id.*

### A. Unsupported, Waived and Frivolous Arguments.

Claimant alleges that the ALJ failed to apply the correct legal standard to
the opinions, testimony, and weight of the evidence. When a claimant contends
that an ALJ or the Appeals Counsel applied an incorrect legal standard all they
need do is identify the correct legal standard and show that either it was not
followed, or some incorrect standard was applied. Here, although the Claimant
refers to a variety of legal standards, she has not shown the ALJ or Appeals

Counsel applied an incorrect legal standard in any respect.   Therefore, all such arguments are rejected.

Claimant argues that the ALJ failed to evaluate Claimant's conditions under Listings 1.15 and 1.16 and further failed to "complete a proper analysis of [Claimant's] conditions, under the neurological listing 11.00." Doc. No. 30 at 22. Claimant failed to do more than simply assert that an issue exists. *Id.* Accordingly, this issue is also waived. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278-79 (11th Cir. 2009) (explaining that "simply stating an issue exists, without further argument or discussion constitutes abandonment of that issue."). As an initial matter, the ALJ's decision specifically states he considered "[Sections] 11.00 et. seq., <u>Neurological Disorders</u>. Despite the claimant's combined impairments, the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment individually or in combination." R. 26.   Claimant says nothing about that fact.

Without citing  authority or citation the Commissioner argues Listings 1.15 and 1.16 were not effective until April 2, 2021, so they were not applicable because the ALJ's decision is dated August 20, 2019.   Doc. No. 30 at 33; *see also* R. 33. Claimant utterly fails to address that argument.  Doc. No. 30. [3]   Although the

---

[3]The Scheduling Order requires the parties to exchange their portions of the brief and to have a good faith conference to resolve or narrow any disputed issues before filing the final Joint Memorandum.   Doc. No. 23 at 1-2.   The purpose is to provide the parties an opportunity to

Commissioner cited no authority, the Commissioner is correct. *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 FR 78164, 2020 WL 7649906 (S.S.A. 2020). Accordingly, Claimant's arguments in regard to the Listings are rejected because they are both legally and factually frivolous.

Similarly, although Claimant provides a summary of the law governing the ALJ's obligations to weigh medical opinions in the record, Doc. No. 30 at 24-25, because the Claimant fails to identify any opinion the ALJ failed to weigh, that argument is waived. *See Singh*, 561 F.3d at 1278.

Claimant also states that the ALJ's analysis was "flawed" and that the "transferability of job skills remains relevant, under SSR 82-61, SSR 82-41, and SSR 82-62." Doc. No. 30 at 42. However, Claimant neglects to address the requirements of those authorities, which expressly provide that "even if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work." *Titles II & XVI: Work Skills & Their Transferability as Intended by the Expanded Vocational Factors Reguls. Effective Feb. 26, 1979*, SSR 82-41 (S.S.A. 1982). That is precisely what the ALJ found in this case – that Claimant's work was unskilled and that she could perform three categories of unskilled work. R. 32-3. Thus, Claimant's argument regarding any error as to transferability of job

---

remove any untenable arguments after having the benefit of their opposition's brief. It appears that was not done in this case.

skills is rejected as it is legally and factually frivolous.

### B.  Medical Evidence and Its Combined Effect

Claimant argues that the ALJ failed to consider all the evidence including the cumulative effect of Claimant's impairments. Doc. No. 30 at 19-23. More specifically, Claimant alleges that there was diagnostic and treatment evidence in the record concerning a multitude of medical conditions and the severity of her carpal tunnel, migraines, and the degeneration of her cervical spine, as well as "subluxation, disc desiccation, loss of disc height, and findings of stenosis," that were not adequately considered by the ALJ. Doc. No. 30 at 19-23.  Claimant further argues that the ALJ failed to consider the combined effect of Claimant's impairments and failed to articulate his findings concerning the effect of those impairments at step two of the evaluation process.  Doc. No. 30 at 39-40.  However, Claimant does not mention or address the fact that the ALJ found the Claimant has several severe impairments at step two.  R. 23.  Under the law, any error at step two is harmless so long as the ALJ does find a severe impairment at step two and goes on to consider the combined effect of the Claimant's severe and non-severe impairments at step three of the evaluation process. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014);[4] *Farrington v. Astrue*, No.

---

[4] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

3:09-cv-94-TEM, 2010 WL 1252684, at *4 (M.D. Fla. Mar. 29, 2010) (finding a single impairment at step two is all that is required so long as the ALJ considers all impairments, both severe and non-severe, throughout the sequential evaluation process, including in determining claimant's RFC).   Moreover, the ALJ expressly stated that the combined effect of all the Claimant's "impairments were considered in assessing her [RFC] below."  R. 25.  However, Claimant never addresses that fact and has not shown otherwise.  Thus, any alleged error at step two is harmless.

Any such error is harmless for another reason. Claimant fails to cite to the record or explain whether these allegedly unconsidered diagnostic findings caused limitations beyond those found by the ALJ. "[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d at 1213 n. 6. Claimant completely failed to argue or address what work related limitations, if any, result from the medical evidence the ALJ allegedly failed to consider.  Therefore, Claimant's argument is  unpersuasive.

### C. <u>Material Misstatements</u>

Claimant argues that the ALJ made material misstatements when evaluating her functional limitations. Doc. No. 30 at 37. If a material misstatement of fact substantially affects an ALJ's ultimate conclusion, thereby making the ALJ's decision not supported by substantial evidence, then reversal is warranted.

*See Bissinger v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 143973, 2014 WL 5093981, at *5-6 (M.D. Fla. Oct. 9, 2014) (finding that the ALJ's misstatement of fact was not harmless) (citations omitted). In *Diorio v. Heckler* the Eleventh Circuit held that an ALJ's misstatement of fact is harmless error if it does not affect the ALJ's conclusion. 721 F.2d 726, 728 (11th Cir. 1983).

### 1. *Illusions and Hallucinations*

Claimant contends that the ALJ erred in evaluating her mental limitations because he erroneously stated that the records regarding a psychiatric evaluation at LifeStream on July 26, 2018, indicate "there were no illusions or hallucinations present." Doc. No. 30 at 22 (citing R. 24). The Claimant argues that this is contrary to Plaintiff's medical records and that the ALJ referred to these records during Claimant's hearing. *Id.* (citing R. 58, 561). That document does indicate that illusions or hallucinations were present. R. 562, 572. The misstatement by the ALJ occurred at step two of the evaluation process. R. 23-24. In describing Claimant's evaluation at LifeStream the ALJ also noted the Claimant "said she heard chatter she did not understand." R. 24. Thus, at step two the ALJ noted Claimant heard voices as well as her lack of a psychotic disorder diagnosis, that her mental status evaluation was essentially normal, that the primary care physicians' records do not mention a psychotic disorder, and that she only sought mental health treatment once. R. 25. Claimant does not contest these statements.

At step three of the evaluation process, the ALJ considered the "combined effects of Claimant's severe and non-severe impairments . . . in assessing her residual functional capacity." *Id.* At that stage, the ALJ expressly addressed Claimant's treatment at LifeStream and noted "she hears things such as voices in another part of the house.  She does not understand what the voices say." R. 30 – 31.  Thus, on this record the ALJ's misstatement constitutes harmless error because the ALJ considered Claimant's mental limitations at steps two and three, including her testimony about hallucinations, articulated multiple bases for finding her mental impairments were non-severe at step two, and went on to consider all Claimant's severe and non-severe impairments at step three.  *See Gray v. Comm'r of Soc. Sec.*, No. 6:18-CV-1014-ORL-LRH, 2019 WL 3934441, at *8 (M.D. Fla. Aug. 20, 2019) (finding ALJ's erroneous summary of opinions was harmless where the ALJ considered all the limitations in the opinions).  Furthermore, Claimant has offered no evidence showing her work limitations due to mental impairments are more severe than those found by the ALJ. *See Hamilton Berryhill*, No. CV 16-000289-B, 2017 WL 2392426, at *6 (S.D. Ala. June 2, 2017) (rejecting the claimant's argument that the ALJ did not account for her mental impairments or severe pain because the RFC with respect to the impairments was supported by substantial evidence and the claimant "failed to show any limitations caused by these impairments in excess of the RFC."). Therefore, the Court finds the ALJ's  misstatement is harmless

error.

### 2. *Spinal Treatment*

Claimant argues that the ALJ erroneously stated that Claimant did not seek treatment from a spine specialist after October 2017. Doc. No. 30 at 23 (citing R. 31). The ALJ's statement was made at step two of the evaluation process.  R. 31. To refute the ALJ's statement, Claimant points to treatment records from Dr. Kim at the Florida Neurological Center dated at least through May 16, 2019, which show that Claimant sought treatment for her spinal impairments. Doc. No. 30 at 23 (citing R. 517-526). The records show Claimant was treated by Dr. Kim in January, February, and May of 2019, having received a peripheral nerve block for cervical pain in February.  R. 517-26.  Although not mentioned by Claimant, at step three the ALJ summarizes Dr. Kim's records for each of the three visits. R. 29. Claimant does not challenge the accuracy of the ALJ's summary of Dr. Kim's records other than the fact the ALJ seemingly mischaracterized Dr. Kim as not being a spine specialist. Doc. No. 30 at 23. Despite this misstatement, the ALJ's decision shows that, in determining whether Claimant's symptoms limit her ability to work, the ALJ considered Claimant's visits with Dr. Kim and described them in detail. R. 29. Specifically, the ALJ referenced that Claimant sought treatment with Dr. Kim for migraines and neck pain in 2019. R. 29. The ALJ ultimately found that Claimant's degenerative disc disease of the cervical spine

with radiculopathy was a severe impairment. R. 23. An ALJ's decision need not be perfect. *See Luster v. Astrue*, No. 3:07-CV-533-TEM, 2008 WL 4371328, at *9 (M.D. Fla. Sept. 19, 2008) ("The Court is not required to remand for clarification in search of a perfect decision, where the remand would be an empty exercise."). On this record, Claimant has failed to show the ALJ's misstatement about Dr. Kim's specialization is anything more than harmless error.

### 3. *Scoliosis*

Claimant also states that the ALJ claimed that there was no evidence of scoliosis in Claimant's back, which was "in direct contrast to diagnostic imaging that shows the presence of scoliosis." Doc. No. 30 at 21 (citing R. 27, 495). The ALJ's statement concerning "no evidence of scoliosis" is expressly based on a January 5, 2017 medical record from Tracy J. Perkins, ARNP, at Community Health Centers, which the ALJ cited in the record. R. 27, 327. Although not mentioned by the Claimant in her argument, the record specifically referred to by the ALJ states: "no evidence of scoliosis".  R. 327.  Instead, Claimant argues that the statement is in direct contrast to a diagnostic imaging report dated on October 26, 2017. R. 495.  In short, the ALJ's summary of the records he was referring to appears to be accurate, and Claimant does not show that the ALJ's failure to reference the report she relies upon is reversible error. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of

evidence in his decision," if the decision is not a broad rejection that is insufficient to determine if the ALJ considered the claimant's medical condition as a whole). Moreover, Claimant has failed to show that her scoliosis diagnosis impacted her ability to work. *See Caldwell*, 261 F. App'x at 190 (error was harmless where the ALJ's failure to discuss the weight given to an opinion that included limitations that would not affect the claimant's ability to perform the jobs the VE identified as appropriate).

### 4. *Side Effects of Medication*

Claimant claims that the ALJ misstated the record when he stated that Claimant did not mention any side effects from her medications to her treating physicians. Doc. No. 30 at 23 (citing R. 31). The ALJ's statement was made in the context of evaluating Claimant's credibility. R. 31. In finding that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with the evidence in the record, the ALJ found that several pieces of evidence and opinions in the record were not consistent with Claimant's self-report. Namely, (1) the opinions of the state agency medical consultant; (2) examination findings; (3) Claimant's noncompliance with physical therapy; (4) Claimant's reports that several medications helped; (5) that there were no restrictions from treating physicians; (6) that Claimant had not sought treatment from a spine specialist since October 2017; and (7) Claimant made no

mention of side effects from medications to her treating physicians. *Id.* The Claimant cites a variety of documents purporting to contradict the ALJ's statement that she did not mention the side effects she testified about to her treating physicians.  R. 31.  Claimant testified her side effect was "chronic fatigue."  R. 51. Nowhere in the citations Claimant provides purporting to contradict the ALJ's statement that she did not report her side effects to her treating physicians is there a reference to chronic fatigue, however. Doc. No. 30 at 23; R. 262, 269, 517, 542, 566.

Of the seven things the ALJ relied upon for his credibility finding, Claimant has alleged that two are misstatements. Doc. No. 30 at 23. Claimant fails to show that without these two alleged misstatements the ALJ's RFC determination—that Claimant could perform light work with postural and environmental restrictions—lacks the support of substantial evidence. *Gray v. Comm'r of Soc. Sec.*, No. 6:18-cv-1014-LRH, 2019 U.S. Dist. LEXIS 140528 at *22 (M.D. Fla. Aug. 20, 2019) (ALJ's misstatement harmless when credibility finding supported  by substantial evidence from several other named sources). Thus, the misstatements are harmless.

### 5.  English Proficiency

Claimant argues that it was reversible error for the ALJ to conclude that Claimant could communicate in English, when she cannot, and as a result failed to accurately evaluate Claimant's RFC and listing evaluation. Doc. No. 30 at 37-38

(citing R. 32). The Commissioner argues that because the vocational expert ("VE") was asked to consider a person with Claimant's education, which includes an inability to communicate in English, and the VE was at the hearing where Plaintiff testified through an interpreter, "the ALJ's hypothetical question to the VE sufficiently [accounted] for the fact that Plaintiff was not able to communicate verbally in English." *Id.* at 46. The Commissioner also argues that "the ability to speak English is of least significance to unskilled jobs such as those the VE identified . . . ." *Id.*

The ALJ relied on the VE's testimony that a hypothetical person such as Claimant could perform the occupations of Marker, Checker 1, and Router, which are all listed as unskilled. R. 33. Under the Social Security regulations, "While illiteracy may significantly limit an individual's vocational scope, the primary work functions in most unskilled occupations relate to working with things (rather than data or people). In these work functions, education has the least significance." 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Because Marker, Checker 1, and Router are unskilled, and education, which includes English literacy under the applicable regulations,[5] has the least significance, and Claimant failed to identify how her

---

[5] On February 1, 2019, a rule was proposed to remove "inability to communicate in English" from the education category as the ability to communicate in English did not accurately reflect the vocational impact of education in the disability determination process. *See* 84 FR 1006, 85 FR 10586. This rule went into effect on April 27, 2020.

inability to communicate in English negates her ability to perform these jobs,[6] any error in the ALJ finding that Claimant could communicate in English was harmless.

## III.   CONCLUSION

Having thoroughly reviewed the briefing, the undersigned reminds Claimant that it is helpful for the parties to directly address at what stage in the familiar five-step sequential review process the ALJ allegedly committed the error alleged.[7] That is simply because different legal standards govern each step, and the parties should be mindful of that when framing and briefing the issues. It also bears noting that with any appeal the goal is not just to show an error was committed below, but rather that it was reversible error because harmless error is insufficient. *Caldwell*, 261 F. App'x 188, 189 (11th Cir. 2008) (error harmless where application of the correct limitations would not have changed the result); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination).

Although the Court refers to Claimant in discussing these deficiencies, it is

---

[6] *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) ("The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists." Citations omitted.).
[7] *See supra* note 1.

counsel's responsibility to properly frame and brief the issues. The practices employed in this case waste everyone's time, including that of counsel and the Court. Of course, addressing these practices directly only furthers the waste occasioned by such poor practices, but without doing so the misconduct is sure to continue. These practices also present a risk that due to the disjointed way in which the briefing is presented the Claimant may be prejudiced because the issues that should have been properly framed and supported were not.

In this instance time was taken to highlight the deficiencies in the briefing in the hope the indecorous practices outlined above will no longer be employed by counsel. Furthermore, this order is intended to serve as fair warning to counsel that any future briefs containing similar deficiencies will be stricken and sanctions may be warranted.

For the reasons stated above, it is **RECOMMENDED** that:

1.  The final decision of the Commissioner be **AFFIRMED**; and

2.  The Clerk be directed to close the case.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal

conclusion the district judge adopts from the Report and Recommendation. 11th
Cir. R. 3-1.

      **RECOMMENDED** in Orlando, Florida, on October 22, 2021.

                                   GREGORY J. KELLY
                           UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Ashley C. LeFevre
Paul J. Morgan
Attorneys for Plaintiff
Morgan, White-Davis and Martinez, P.A.
1099 W Morse Blvd
Winter Park, FL 32789

Karin Hoppmann
Acting United States Attorney
John F. Rudy, III
Assistant United States Attorney
400 N. Tampa St.
Suite 3200
Tampa, FL 33602

Christopher Harris, Chief Counsel, Region IV
John C. Stoner, Deputy Regional Chief Counsel
Megan Gideon, Branch Chief
Jill Sausser, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920
Jill.Smith@ssa.gov

The Honorable Jeffrey A. Ferguson
Administrative Law Judge
Office of Hearing Operations
Suite 300
3505 Lake Lynda Dr
Orlando, Florida 32817-8338